IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

JOSEPH TETRO, et al.          §
                              §
VS.                           §   CIVIL ACTION NO. 4:11-CV-582-Y
                              §
CITIMORTGAGE, INC., et al.    §

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

Before the Court is the Motion for Summary Judgment (doc. 24) filed by defendants CitiMortgage, Inc. ("CitiMortgage"), and Federal National Mortgage Association ("Fannie Mae"). After review, the Court will grant the motion.


I.   Background

In July 2004, plaintiffs Joseph and Bernadette Tetro received a loan from NTFN, Inc., doing business as Premier Nationwide Lending ("Premier"), and used the loan to purchase certain real property in Aledo, Texas ("the property"). (Pls.' App. 1.) To evidence the loan, the Tetros signed a promissory note made payable to Premier and all subsequent note holders. (Defs.' App. 191.) In addition, the Tetros signed a deed of trust securing their repayment of the loan and their performance of covenants under the note. (*Id.* at 194.) By the deed of trust, the Tetros conveyed the property to a trustee, along with the power of sale, to be held in trust for the benefit of Premier. (*Id.* at 193-94.)

That same month, Premier assigned its interest under the deed of trust to ABN AMRO Mortgage Group, Inc. ("ABN AMRO"). (*Id.* at 2,

484.)   Premier also endorsed the note in blank and transferred possession of the note to ABN AMRO. (*Id.* at 2, 11.) In August 2007, ABN AMRO merged into CitiMortgage. (*Id.* at 2, 12.) CitiMortgage began servicing the loan in September 2007, and it has maintained possession of the note and acted as loan servicer at all relevant times since.[1] (*Id.*)

In 2006, while ABN AMRO was still the servicer of the Tetros' loan, Mr. Tetro lost his job, and the Tetros fell behind on their loan payments. (Pls.' App. 1.) This prompted the Tetros to contact ABN AMRO about a potential loan modification. (*Id.* at 2.) In June 2007, the Tetros entered into a loan-modification agreement with ABN AMRO, which increased the principal balance of the loan, extended the loan's maturity date, and reduced the Tetros' monthly payments. (Defs.' App. 207-08, 210-14.) Around this time, according to the Tetros, they made a $1,400 payment that was never credited to their account. (Pls.' App. 2.)

In any event, in August 2007, after discovering that the Tetros had not been paying the applicable property taxes, ABN AMRO sent the Tetros a letter asking them to pay the property taxes and provide

---

[1]   Although the timing is not entirely clear from the evidence or the parties' briefing, it appears that Fannie Mae became the owner of the loan at some point, whether initially or by subsequent assignment, and that CitiMortgage serviced the loan as Fannie Mae's agent. (Pls.' App. 2; Defs.' App. 100-101.) Regardless, CitiMortgage and Fannie Mae's interests are aligned in this lawsuit, and it is undisputed that CitiMortgage, at all relevant times, was the entity authorized to service the loan, collect payments on the note, and initiate foreclosure proceedings. (Defs.' App. 2, 11-12.)

proof of such payment. (Defs.' App. 209.) The June 2007 loan-modification agreement had not included any provisions concerning the payment of property taxes; thus, the Tetros remained obligated under the terms of the original loan agreement to pay the property taxes along with any other assessments that could encumber the property. (*Id.* at 195, 96, 210-14.) After the Tetros failed to provide proof of payment of the delinquent taxes, ABN AMRO proceeded to pay the taxes itself. (*Id.* at 209.) ABN AMRO then set up an escrow account to provide for the payment of future property taxes and increased the Tetros' monthly payment to account for the taxes that ABN AMRO had paid on the Tetros' behalf. (*Id.*)

In February 2008, the Tetros filed a chapter 13 petition for bankruptcy, but the petition was dismissed in March 2009. (*Id.* at 340-83.) In April 2009, the Tetros filed a second chapter 13 bankruptcy petition, which was later converted to a chapter 7 case. (*Id.* at 384-433.) The Tetros were eventually discharged from bankruptcy in November 2009. (*Id.* at 384, 387.)

After their bankruptcy proceedings concluded, the Tetros again fell behind on their loan payments. (Pls.' App. 4.) Consequently, in December 2009, CitiMortgage's foreclosure counsel--Brice, Vander Linden & Wernick, P.C. ("BVW")--sent the Tetros a letter notifying them of their default and providing them thirty days to cure the default or dispute the debt. (Defs.' App. 291.) The Tetros neither cured the default nor disputed any part of the debt. (*Id.* at 142.)

In March 2010, CitiMortgage placed the Tetros on a four-month forbearance plan. (*Id.* at 299.) Upon the expiration of that plan, CitiMortgage reviewed the Tetros' loan for a potential second modification. (*Id.* at 15.) Following its review, however, CitiMortgage declined to modify the loan and, in a letter dated September 15, 2010, notified the Tetros that it planned to refer their loan to BVW to begin foreclosure proceedings.[2] (*Id.* at 308-09.) One month prior, CitiMortgage had sent the Tetros a notice of default and intent to accelerate, granting them thirty days to cure, but the Tetros had not cured their default. (*Id.* at 100-01, 146-47.) Then in October 2010, BVW sent the Tetros a notice of acceleration and a notice of substitute trustee's sale, which apprised the Tetros that the property was scheduled to be sold on December 7, 2010. (*Id.* at 472-74.)

These notices notwithstanding, in November 2010, CitiMortgage prequalified the Tetros for a three-month Home Affordable Mortgage Program ("HAMP") trial plan. (*Id.* at 7.) During the trial period, the Tetros were required to make the trial-plan payments and provide certain documents for review to determine whether they were eligible for a HAMP loan modification. (*Id.* at 7-8.) According to Defendants, the Tetros did not timely comply with these requirements. (*Id.* at

---

[2]    Bank of America also sent notice to the Tetros of its intention to foreclose on the property. (Defs.' App. 145.) Bank of America apparently held second lien on the property. (*Id.*)

8.)

According to the Tetros, however, they faxed all requested documents and made numerous phone calls to ensure that CitiMortgage received the documents needed to prevent foreclosure. (Pls.' App. 6-8.) The Tetros allege that a CitiMortgage representative assured them over the phone that they qualified for a HAMP loan modification-- and not just that they prequalified for a HAMP trial plan. (*Id.* at 6, 53.) The Tetros also allege that CitiMortgage's representatives were difficult to get in contact with during the days leading up to the foreclosure sale and that, when they could be reached, the representatives often gave contradictory and misleading information. (*Id.* at 7-8.) For example, the Tetros allege that one CitiMortgage representative told them that the December 7 foreclosure sale had been postponed thirty days while a second representative later told them that the sale had not been postponed and was scheduled to occur as noticed.[3] (*Id.* at 7-8.)

Ultimately, the Tetros failed to tender the amounts necessary to prevent the foreclosure sale and resuscitate the loan, and BVW proceeded with the sale on December 7. (Defs.' App. 6-7, 9.) CitiMortgage purchased the property at the sale and subsequently conveyed it to Fannie Mae, who purports to currently own the property.

---

[3] By contrast, CitiMortgage's records indicate that the Tetros requested postponement of the foreclosure sale and that a representative informed them that she would ask the loss-mitigation to put a hold on the foreclosure, but that no hold was ever approved. (Defs.' App. 8.)

(*Id.* at 478-83.)

Against this backdrop, the Tetros filed the instant suit against CitiMortgage, Fannie Mae, and BVW in the 43rd Judicial District Court, Parker County, Texas.  The Tetros subsequently nonsuited their claims against BVW, and CitiMortgage and Fannie Mae removed the case to this Court (doc. 1).  The Tetros assert claims against CitiMortgage and Fannie Mae for (1) breach of contract, (2) anticipatory breach of contract, (3) unreasonable collection efforts, (4) violations of the Texas Debt Collection Practices Act ("TDCPA"), (5) negligent misrepresentation, (6) tortious interference with contract, and (7) suit to quiet title and trespass to try title.[4]  CitiMortgage and Fannie Mae now move for summary judgment on these claims.

## II.  Legal Standard

When the record establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," summary judgment is appropriate.  Fed. R. Civ. P. 56(a).  "[A dispute] is 'genuine' if it is real and substantial, as opposed to merely formal, pretended, or a sham." *Bazan v. Hidalgo Cnty.*, 246 F.3d 481, 489 (5th Cir. 2001) (citation omitted).  A fact is "material" if it "might affect the outcome of the suit under governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

---

[4]    The Tetros have dropped their claim for gross negligence.  (Pls.' Resp. Br. 38 n.1.)

6

(1986).

To demonstrate that a particular fact cannot be genuinely in dispute, a defendant movant must (a) cite to particular parts of materials in the record (e.g., affidavits, depositions), or (b) show either that (1) the plaintiff cannot produce admissible evidence to support that particular fact, or (2) if the plaintiff has cited any materials in response, show that those materials do not establish the presence of a genuine dispute as to that fact.  Fed. R. Civ. P. 56(c)(1). Although the Court is **required** to consider only the cited materials, it **may** consider other materials in the record.  *See*  Fed. R. Civ. P. 56(c)(3).  Nevertheless, Rule 56 "does not impose on the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992). Instead, parties should "identify specific evidence in the record, and . . . articulate the 'precise manner' in which that evidence support[s] their claim." *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994).

In evaluating whether summary judgment is appropriate, the Court "views the evidence in the light most favorable to the nonmovant, drawing all reasonable inferences in the nonmovant's favor." *Sanders-Burns v. City of Plano*, 594 F.3d 366, 380 (5th Cir. 2010) (citation omitted) (internal quotation marks omitted).  "After the non-movant

7

has been given the opportunity to raise a genuine factual [dispute], if no reasonable juror could find for the non-movant, summary judgment will be granted." *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

III. Analysis

    A.   Breach of Contract

"In Texas, 'the essential elements of a breach of contract claim are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 418 (5th Cir. 2009) (quoting *Aguiar v. Segal*, 167 S.W.3d 443, 450 (Tex.App.--Houston [14th Dist.] 2005, pet. denied)).  The Tetros claim that Defendants breached three contracts: (1) the deed of trust, (2) the note, and (3) an oral unilateral contract to postpone the December 7 foreclosure sale and modify the Tetros' loan.

    1.   Breach of the Deed of Trust

The Tetros contend that Defendants breached the deed of trust by failing to provide them "with a notice of acceleration, notice of foreclosure, or the right to cure and reinstate the note." (Pls.' Am. Pet. 12, ¶ 33.)  According to the Tetros, these notices, which are required under the Texas Property Code, were incorporated as terms

8

into the deed of trust by virtue of the deed of trust's language that it is subject to "applicable law." (Pls.' Resp. Br. 14.) Even assuming that these provisions were validly incorporated as terms of the deed of trust, the Tetros' claim for breach of the deed of trust fails as a matter of law.

First, the undisputed summary-judgment record confirms that CitiMortgage did, in fact, send the Tetros notices of default, acceleration, and opportunity to cure. CitiMortgage has produced evidence, for example, that it sent the Tetros a notice of default and opportunity to cure in August 2010, and a notice of acceleration and a notice of substitute trustee's sale in October 2010. (Defs.' App. 100-01, 131-32, 134, 146-47, 472-74.) And the Tetros have produced no evidence to place this in dispute.

Second, and even more fundamentally, the Tetros have not shown that they performed or tendered performance under the deed of trust. Indeed, the undisputed evidence establishes that the Tetros materially breached the deed of trust by defaulting on their loan payments and failing to cure that default. (Pls.' App. 1, 2; Defs.' App. 291, 142.) The Tetros fail to "acknowledge that [their] initial (and never cured) contract breach provoked their problems, and a party in default cannot assert a claim for breach against the other party." *Water Dynamics, Ltd. v. HSBC Bank, USA, Nat'l Ass'n*, No. 12-10307, 2013 WL 363118, at *1 (5th Cir. Jan. 30, 2013) (unpublished) (citing *Dobbins v. Redden*, 785 S.W.2d 377, 378 (Tex. 1990)); *see also Thomas v. EMC*

9

*Mortg. Corp.*, No. 12-10143, 2012 WL 5984943, at *2 (5th Cir. Nov. 30, 2012)(unpublished) ("Under well-established principles of Texas contract law, [a] material breach would normally prevent [the plaintiff] from maintaining a breach-of-contract claim." (citation omitted)).

The Tetros assert that Defendants waived their rights to accelerate and foreclose and that Defendants cannot now rely on the Tetros' initial default as a defense. But this argument fails for two reasons. First, the deed of trust contains a "no-waiver" provision. (Defs.' App. 199-200.) Second, the Tetros have "adduced no evidence that [Defendants] . . . manifested an 'actual intent to relinquish their rights' under the [deed of trust], an essential element of waiver under Texas law." *Thomas*, 2012 WL 5984943, at *2 (quoting *G.H. Bass & Co. v. Dalsan Props.-Abilene*, 885 S.W.2d 572, 577 (Tex. App.--Dallas 1994, no writ)); *see also Water Dynamics*, 2013 WL 363118, at *1 ("Allegations of 'inconsistent and inequitable conduct' that allegedly violated the note, deed of trust, and oral modification, do not suffice to show an intentional waiver by the lender, especially in the face of the deed of trust's anti-waiver provision.").[5]

　　　2.　Breach of the Note

---

[5]　The Tetros also assert that Defendants "induced the default." (Pls.' Resp. Br. 12.) But even assuming that Defendants' actions somehow caused the Tetros to forego making payments during their loan-modification discussions, the Tetros do not explain how Defendants induced their initial breach of falling behind on their payments.

The Tetros contend that the note, as a negotiable instrument, contains an implied covenant of good faith and fair dealing, which Defendants breached.  Under Texas law, however, there is no special relationship between a mortgagor and mortgagee that gives rise to a duty of good faith and fair dealing.  *See Milton v. U.S. Bank Nat'l Ass'n*, No. 12-40742, 2013 WL 264561, at *3 (5th Cir. Jan. 18, 2013) (unpublished); *see also Thomas*, 2012 WL 5984943, at *2 ("We also agree with the district court that the banks could not have breached a duty of good faith and fair dealing.  Under Texas law, there is no such duty absent a special relationship, which does not generally exist between a mortgagor and mortgagee." (citations omitted)).  Moreover, assuming *arguendo* that the note did contain an implied covenant of good faith and fair dealing, the Tetros have not shown how Defendants' conduct breached it.

### 3.   Breach of the Alleged Oral Unilateral Contract

The Tetros' third breach-of-contract claim is premised on a set of oral promises allegedly made by CitiMortgage representatives. According to the Tetros, CitiMortgage promised that the Tetros "were eligible for a loan modification, that Citi[Mortgage] would not foreclose while [they] were in the loan modification process[,] and that the foreclosure sale would be postponed." (Pls.' Resp. Br. 17.) The Tetros contend that this set of promises amounted to an offer to enter into a unilateral contract and that they accepted the offer

by faxing in the requested documents and making forbearance payments.[6]

The Tetros' contention is without merit.  An agreement to avoid foreclosure or to modify a mortgage loan exceeding $50,000 is subject to the Texas statute of frauds and "must be in writing to be enforceable." *Milton*, 2013 WL 264561, at *2 (citing Tex. Bus. & Com. Code Ann. § 26.02(a),(b) (West 2013); *see also Gordon v. JPMorgan Chase Bank, N.A.*, No. 12-20323, 2013 WL 49587, at *3-4 (5th Cir. Jan. 3, 2013) (unpublished) (observing that "[w]hen a written agreement is governed by the statute of frauds, it cannot be materially modified by a subsequent oral agreement").

The Tetros argue for application of the promissory-estoppel and partial-performance exceptions to the statue of frauds.  But their arguments for doing so are convoluted and lacking in evidentiary support.  Because the Tetros have not produced a written agreement reflecting the alleged unilateral contract, this claim fails as a matter of law.

B.   Anticipatory Breach of Contract

"In Texas, in order to prevail on a claim for anticipatory breach, a plaintiff must establish each of the following elements: (1) an absolute repudiation of the obligation; (2) a lack of a just excuse

---

[6]     The Court is puzzled by the Tetros' assertion that their making forbearance payments somehow constituted acceptance of CitiMortgage's alleged oral offer.  The Tetros made the forbearance payments under the March 2010 four-month forbearance plan--well before CitiMortgage's alleged oral promise to postpone the foreclosure sale.  It would seem, then, that because the payments preceded the alleged offer, they cannot function as proof of acceptance.

for the repudiation; and (3) damage to the non-repudiating party."
*Gonzalez v. Denning*, 394 F.3d 388, 394 (5th Cir. 2004) (citing *Taylor Pub. Co. v. Sys. Mktg. Co.*, 686 S.W.2d 213, 217 (Tex. App.--Dallas 1984, writ ref'd n.r.e.)).  The Tetros have not established any of these elements.  In addition, the Tetros fail to differentiate their anticipatory-breach claims from their breach-of-contract claims. (Pls.' Resp. Br. 26.)  Thus, the former fail for the same reasons as the latter.  *See Water Dynamics*, 2013 WL 363118, at *1 ("In lieu of repudiation, [Appellants] allege no more in their appellate brief than the same deed of trust breaches already discussed. There is no legal basis to collapse these two claims, nor is there any basis to infer from the lender's conduct a positive and unequivocal repudiation of the contract. In addition, this claim cannot excuse the consequences of Appellants' prior breach.").

   C.   Unreasonable Collection Efforts

   Under Texas law, unreasonable collection efforts is an intentional tort.  *See Narvaez v. Wilshire Credit Corp.*, 757 F. Supp. 2d 621, 635 (N.D. Tex. 2010) (Lynn, J.).  "The elements are not clearly defined and the conduct deemed to constitute an unreasonable collection effort varies from case to case." *Id.* (quoting *EMC Mortg. Corp. v. Jones*, 252 S.W.3d 857, 868 (Tex. App.--Dallas 2009, no pet.)).  Nevertheless, it is evident that to prevail on such a claim a plaintiff must demonstrate "a course of harassment that was willful, wanton, malicious, and intended to inflict mental anguish and bodily harm."

13

*Water Dynamics*, 2013 WL 363118, at *2; *see also Thomas*, 2012 WL 5984943, at *3 ("[T]he tort of unreasonable collection is intended to deter outrageous collection techniques, particularly those involving harassment or physical intimidation." (citations omitted) (internal quotation marks omitted)); *De Franceschi v. BAC Home Loans Servicing, L.P.*, 477 F. App'x 200, 204-05 (5th Cir. 2012) (applying the "willful, wanton, malicious" standard to plaintiff's unreasonable-collection claim and observing that the "ordinary person" standard urged by plaintiff "has largely been disavowed by Texas courts").

The Tetros have not produced evidence of a willful, wanton, or malicious course of harassment by CitiMortgage or Fannie Mae. *Water Dynamics*, 2013 WL 363118, at *2. Nor have they presented evidence that either of Defendants intended to inflict mental anguish or bodily harm upon them. *Id.* Therefore, the Tetros have not created a dispute of material fact concerning their claim of unreasonable collection efforts.

D.   TDCPA

The TDCPA makes it unlawful for a debt collector to employ the following practices, among others: (1) "threatening to take an action prohibited by law"; (2) "collecting or attempting to collect interest or a charge, fee, or expense incidental to the obligation unless [it] is expressly authorized by the agreement creating the obligation or legally chargeable to the consumer"; (3) "misrepresenting the character, extent, or amount of a consumer debt, or misrepresenting

14

the consumer debt's status in a judicial or governmental proceeding"; and (4) "using any other false representation or deceptive means to collect a debt or obtain information concerning a consumer." Tex. Fin. Code Ann. §§ 392.301(a)(8), 392.303(a)(2), 392.304(a)(8)&(19) (West 2013).

The Tetros have not produced evidence that Defendants employed any of the aforementioned practices. The Tetros contend that CitiMortgage's acceleration of their loan and foreclosure of the property amounted to an "action prohibited by law." Tex. Fin. Code Ann. § 392.301(a)(8). But this argument rises and falls on the Tetros' theory that Defendants waived their right to accelerate and foreclose on the property, which the Court has already rejected.

The Tetros also contend that CitiMortgage attempted to collect charges and fees that were not authorized by the deed of trust or otherwise "legally chargeable to the consumer." Tex. Fin. Code. Ann. § 392.303(a)(2). And although the Tetros cite various documents in their appendix in support of this contention, they do not explain which fees were unauthorized or demonstrate how they were unauthorized. Therefore, this contention is without merit. *See Thomas*, 2012 WL 5984943, at *4 ("[C]onclusional allegations of unexplained fees . . . do not constitute evidence of improper fees.").

Additionally, the Tetros contend that Defendants "misrepresent[ed] the character, extent, or amount of [the Tetros'] debt" and used "false representation[s] or deceptive means to collect [their] debt." Tex.

15

Fin. Code. Ann. § 392.304(a)(8)&(19).  Defendants did this, argue

the Tetros, "by misleading [them] into entering into numerous

agreement, [sic] of which Defendants failed to abide by."  (Pls.'

Resp. Br. 35.)  But "discussions regarding loan modification or a

trial payment plan are not representations, or misrepresentations,

of the amount or character of a debt."  *See Thomas*, 2012 WL 5984943,

at *4 (citation omitted) (internal quotation mark omitted).  And the

Tetros have not produced evidence that anything more than mere

discussions occurred.  Furthermore, even if they had, the Tetros do

not "direct [the Court] to any authority indicating that the banks'

failure to modify their loan as promised constitutes a violation of

Section 392.304(a)(19)."[7]  *Id.*

     E.   Negligent Misrepresentation

     Under Texas law, a claim for negligent misrepresentation has

four elements:

> (1) the representation is made by a defendant in the course
> of his business, or in a transaction in which he has a
> pecuniary interest; (2) the defendant supplies "false
> information" for the guidance of others in their business;
> (3) the defendant did not exercise reasonable care or

---

[7]     Relatedly, the Tetros contend that Defendants violated section
392.101's requirement that third-party debt collectors post a surety bond before
attempting to collect debts in Texas.  *See* Tex. Fin. Code Ann. § 392.101.  But
the Tetros have not created a dispute of fact as to whether CitiMortgage or
Fannie Mae was a "third-party debt collector" within the meaning of the statute.
An entity that might otherwise qualify as a third-party debt collector is
excepted from the bond requirement where the entity obtained the debt before it
went into default.  *See Enis v. Bank of Am.*, No. 3:12-CV-0295-D, 2012 WL 4741073,
at *7 (N.D. Tex. Oct. 3, 2012) (Fitzwater, C.J.).  Defendants' evidence shows
that the June 2007 loan modification had brought the Tetros' account current just
before CitiMortgage took over the servicing of the loan from ABN AMRO in
September 2007.  And the Tetros have not controverted this.

competence in obtaining or communicating the information;
and (4) the plaintiff suffers pecuniary loss by justifiably
relying on the representation.

*Fed. Land Bank Ass'n v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991).

The Tetros proffer a number of misrepresentations allegedly made by Defendants.  At bottom, however, the alleged misrepresentations merely amount to "promises of future action," which "are not actionable as a negligent-misrepresentation tort." *De Franceschi*, 477 F. App'x at 205; *see also Thomas*, 2012 WL 5984943, at *3 ("The [plaintiffs'] attempt to characterize the banks' supposedly broken promises as 'existing facts' is unpersuasive and unsupported by the sum-mary-judgment record.").[8]  Moreover, the Tetros' "reliance on oral representations by customer service representatives that were contradicted by the terms of the loan agreement and the notice of foreclosure was not reasonable as a matter of law." *Milton*, 2013 WL 264561, at *3 (citing *TMI, Inc. v. Brooks*, 225 S.W.3d 783, 795 (Tex. App.--Houston [14th Dist.], 2007, pet. denied)).[9]

---

[8]    "Indeed, the very fact that the [Tetros] try also to construe this [set of] statement[s] as an oral contract belies their re-characterization of the statement[s] as [statements] of existing fact." *De Franceschi*, 477 F. App'x at 205.

[9]    Further, it appears that the Tetros' negligent-misrepresentation claim is based on duties imposed by the parties' contractual relationship in the deed of trust--as opposed to a duty imposed by tort law.  Thus, the claim is likely barred by the economic-loss rule. *See Belanger v. BAC Home Loans Servicing, L.P.*, No. W-11-CA-00086, 2011 WL 6987152, at *3 (W.D. Tex. Dec. 9, 2011); *see also Sanghera v. Wells Fargo Bank, N.A.*, No. 3:10-CV-2414-B, 2012 WL 555155, at *5 (N.D. Tex. Feb. 21, 2012) (Boyle, J.) ("[W]hen a plaintiff alleges only economic loss arising out of a contractual relationship between the parties, the plaintiff is precluded from proceeding under a negligence cause of action." (citation omitted)); *Sharyland Water Supply Corp. v. City of Alton*, 354 S.W.3d 407, 415-18 (Tex. 2011) (explaining in detail the economic-loss rule); *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex. 1986) ("When the injury is only

17

F.   Tortious Interference with Contract

In Texas, to prevail on a claim for tortious interference with contract, a plaintiff must show: "(1) the existence of a contract subject to interference; (2) a willful and intentional act of interference; (3) such act was a proximate cause of damage; and (4) actual damage or loss occurred." *Fluorine On Call, Ltd. v. Fluorogas Ltd.*, F.3d 849, 864 (5th Cir. 2004) (citation omitted).  The Tetros have implicitly waived this claim by not addressing it in their response brief.  In any event, they have failed to produce evidence of the claim and therefore have not created a dispute of material fact.

G.   Suit to Quiet Title and Trespass to Try Title

"A suit to quiet title--also known as a suit to remove cloud from title--is an equitable action that clears a valid title against a defendant's invalid claim to the property." *James v. Wells Fargo Bank, N.A.*, No. 3:11-CV-2228-B, 2012 WL 778510, at *2 (N.D. Tex. Mar. 12, 2012) (Boyle, J.) (citations omitted).  To prevail, "a plaintiff must show '(1) an interest in a specific property, (2) title to the property is affected by a claim by the defendant, and (3) the claim, although facially valid, is invalid or unenforceable.'"  *Id.* at *2 (quoting *Bell v. Bank of Am. Home Loan Servicing*, No. 4:11-cv-02085, 2012 WL 568755, at *6 (S.D. Tex. Feb. 21, 2012)).  Similarly, "[t]o

---

the economic loss to the subject of a contract itself, the action sounds in contract alone." (citations omitted)).

recover in a trespass to try title suit, the plaintiff has the burden to prove its title to the disputed property by: (1) a regular chain of conveyances from the sovereign; a superior title out of a common source; or (3) prior possession that has not been abandoned." *Longoria v. Lasater*, 292 S.W.3d 156, 165 (Tex. App.--San Antonio 2009, pet. denied) (citation omitted). In both types of claims, the plaintiff "must prove and recover on the strength of his own title, not the weakness of his adversary's title." *Fricks v. Hancock*, 45 S.W.3d 322, 327 (Tex. App.--Corpus Christi 2001, no pet.)(citations omitted).

The Tetros' quiet-title and trespass-to-try-title claims are premised on their argument that Defendants lacked the authority to foreclose and that the December 7 sale was void. (Pls.' Resp. Br. 43.) As noted above, Defendants have had possession of the note and have held a beneficial interest under the deed of trust at all relevant times in this case. Moreover, it is undisputed that the Tetros defaulted on their loan and that the deed of trust authorized foreclosure on the property in the event of default. In light of this, and given that the Tetros have produced no evidence establishing the "strength of their own title," the Court concludes that Defendants' are entitled to summary judgment on these claims. *Fricks*, 45 S.W.3d at 327.[10]

---

[10]     More generally, the Tetros' default on the loan prevents them from being entitled to equitable relief. *See Fillion v. David Silvers Co.*, 709 S.W.2d 240, 246-47 (Tex. App.--Houston [14th Dist.] 1986, writ ref'd n.r.e.); *see also Grella v. Berry*, 647 S.W.2d 15, 18 (Tex. App.--Houston [1st Dist.] 1982, no writ) ("[I]t is a principle of equity that to obtain equitable relief the applicant

IV.   Conclusion

Based on the foregoing, the Court concludes that the Tetros have failed to create dispute of material fact as to any of their claims and that Defendants are entitled to judgment as a matter of law. Accordingly, Defendants' motion for summary judgment is GRANTED. All claims in the above-styled and -numbered cause are DISMISSED WITH PREJUDICE.[11]

SIGNED March 25, 2013.

_Terry R. Means_
TERRY R. MEANS
UNITED STATES DISTRICT JUDGE

---

must have done equity.").

    [11]   Defendants raise a number of objections to the Tetros' summary-judgment evidence.  The Court declines to address them, however, because the Tetros have failed to create a dispute of material fact even assuming the admissibility of their evidence.  Accordingly, Defendants' objections are OVERRULED.  That said, conclusory or non-factual statements in Mrs. Tetro's affidavit have not been given effect merely because there has been no formal ruling explicitly excluding such statements.
    Additionally, the Tetros object in passing "to the voluminous appendix filed in support of Defendants' Motion for Summary Judgment on the ground that most of the documents attached are irrelevant, not necessary, and are surplusage." (Pls.' Resp. Br. 12.)  But the Tetros provide no further guidance as to which specific documents fall into these categories of inadmissibility. While the Court has not knowingly admitted irrelevant or otherwise inadmissible evidence, the Court is disinclined to ferret through Defendants' appendix in search of documents that fit within the scope of the Tetros' objection. Therefore, the Court OVERRULES the Tetros' general objection.